UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYRONE STALLWORTH, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF CHICAGO, a municipal | ) |
| corporation, and | ) |
| M. BAUTISTA, #5521, | ) |
| O. NAVARRO, #6059, | ) |
| A. SALGADO, #1484, | ) |
| City of Chicago Police Officers, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### Jurisdiction/Venue

1. The incident giving rise to this Complaint occurred on or about September 30, 2014, at or around 11:10 p.m., at or about 1907 St. Louis Avenue, City of Chicago, County of Cook.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, the judicial code 28 U.S.C. § 1331 and § 1343(a); the Constitution of the United States, and pendent jurisdiction, as provided under U.S.C. § 1367(a).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) as, upon information and belief, all parties reside in the judicial district, and the events giving rise to the claims asserted occurred in this district.

## Parties

4. At all relevant times pertaining to this occurrence, the Plaintiff, Tyrone Stallworth, was a resident of Chicago, Cook County, Illinois.

5. At the time of this occurrence, the City of Chicago was an Illinois municipal corporation, located in Cook County, Illinois, and the principal employer of Defendants M. Bautista, O. Navarro, and A. Salgado, City of Chicago Police Officers.

6. Alternatively and/or in addition to Defendants Bautista, Navarro, and Salgado being the proximate cause of the false arrest and malicious prosecution of the Plaintiff, Defendant City of Chicago proximately caused the false arrest and malicious prosecution of the Plaintiff by enacting a patently and clearly unconstitutional ordinance, *i.e.*, the municipal ordinance Defendants Bautista, Navarro, and Salgado purported to arrest the Plaintiff under, MCC § 8-4-017 (hereinafter "the ordinance" or "narcotics-related loitering ordinance").

7. Defendants Bautista, Navarro, and Salgado, at the time of this occurrence, were City of Chicago Police Officers, and the actions described in this complaint were taken under color of law, and within the course and scope of their employment as City of Chicago Police Officers.

8. Defendants Bautista, Navarro, and Salgado's actions make them liable individually, but their actions were additionally and/or alternatively the

result of the policies and practices of Defendant City of Chicago, i.e., the enacting municipality of the narcotics-relating loitering ordinance.

## Facts

9. On the night of September 30, 2014, the Plaintiff was in the vicinity of 1907 S. St. Louis Avenue, Chicago, Illinois, adjacent to the Plaza Food & Liquor Store.

10. The Plaintiff's aunt lives on St. Louis Avenue, within two blocks of this area.

11. The Plaintiff's grandfather lives less than a block north of this area, on St. Louis Avenue.

12. The Plaintiff lived within two blocks of this area as a child and has several friends in the area.

13. The Plaintiff currently lives with his mother and grandmother just seven blocks from this area, in the same neighborhood.

14. The Plaintiff attended elementary school less than a block south of this area.

15. The Plaintiff was stopped by a local food and liquor store frequented by many residents of the area.

16. The Plaintiff was not selling drugs or otherwise engaging in behavior consistent with the facilitation of the distribution of substances in violation of the Cannabis Control Act or the Illinois Controlled Substances Act.

17. At some point in the evening, around 11:10 p.m., Defendants Bautista and Navarro arrested the Plaintiff for allegedly violating MCC § 8-4-017.

18. There was no probable cause or any other legal justification for arresting the Plaintiff, pursuant to the narcotics-related loitering ordinance, or any other local, state, or federal statute or ordinance.

19. MCC § 8-4-017 states in relevant part as follows:

   a. Whenever a police officer observes one or more persons engaged in narcotics-related loitering in any public place designated for the enforcement of this section under subsection (b), the police officer shall: (i) inform all such persons that they are engaged in loitering within an area in which such loitering is prohibited; (ii) order all such persons to disperse and remove themselves from within sight and hearing of the place at which the order was issued; and (iii) inform those persons that they will be subject to arrest if they fail to obey the order promptly or engage in further narcotics-related loitering within sight or hearing of the place at which the order was issued during the next eight hours.

   b. The superintendent of police shall by written directive designate areas of the city in which enforcement of this section is necessary because the areas are frequently associated with narcotics-related loitering. Prior to making a determination under this subsection, the superintendent shall consult as he or she deems appropriate with persons who are knowledgeable about the effects of narcotics-related activity in areas in which the ordinance may be enforced . . . The superintendent shall develop and implement procedures for the periodic review and update of designations made under this subsection.

   c. As used in this section:

      1. Narcotics-related loitering means remaining in any one place under circumstances that would warrant a reasonable person to believe that the purpose or effect of that behavior is to facilitate the distribution of substances in violation of the Cannabis Control Act or the Illinois Controlled Substances Act.

      2. Public place means the public way and any other location open to the public, whether publicly or privately owned.

d. Any person who fails to obey promptly an order issued under subsection (a), or who engages in further narcotics-related loitering within sight or hearing of the place at which such an order was issued during the eight-hour period following the time the order was issued, is subject to a fine of not less than $100 and not more than $500 for each offense, or imprisonment for not more than six months for each offense, or both.

20. On information and belief, the ordinance in question was passed by the City of Chicago on February 16, 2000.

21. There was no probable cause to arrest the Plaintiff pursuant to the above ordinance.

22. Alternatively, if this Court were to find there was probable cause to arrest the Plaintiff pursuant to this ordinance, then the City of Chicago is liable on a *Monell* theory of liability because the above-quoted ordinance is unconstitutional, in violation of the equal protection and due process clauses of the United States and Illinois Constitutions, the First Amendment to the United States Constitution, the Fourth Amendment to the United States Constitution, and Article I, Sections Five and Six of the Illinois Constitution.

23. The Plaintiff was arrested by Defendants Bautista and Navarro, and charged with violating the ordinance in question.

24. Defendant Salgado, acting as Supervisor, approved probable cause for the arrest.

25. The Plaintiff was forced to hire an attorney to defend himself against the false charges placed against him by Defendants Bautista, Navarro, and Salgado.

26. On July 24, 2015, the City of Chicago dismissed the case against the Plaintiff, in a manner consistent with the innocence of the Plaintiff.

## COUNT I 42 U.S.C. § 1983 *Monell* Claim
(Plaintiff against Defendant City of Chicago)

27. Plaintiff re-alleges what has previously been alleged in the Complaint.

28. The City of Chicago had an ordinance, described above, in place at the time of the incident that, in an alternative and/or additional theory to the Plaintiff's false arrest claim against Defendants Bautista, Navarro, and Salgado, violated the Plaintiff's constitutional rights under the Illinois and United States Constitutions, the provisions being described earlier above.

29. Alternative to (or in addition to) the Plaintiff's false arrest claim against Defendants Bautista, Navarro, and Salgado, as a result of the actions of the City of Chicago, the Plaintiff suffered incarceration, a loss of liberty, severe emotional distress, as well as pecuniary damages, including but not limited to attorney's fees and the loss of employment, and future employment, including benefits.

WHEREFORE, Plaintiff Tyrone Stallworth demands substantial compensatory damages against Defendant City of Chicago, plus attorneys' fees and costs, and any such other and additional relief as this Court deems equitable and just.

## COUNT II 42 U.S.C. § 1983 False Arrest/False Arrest/Malicious Prosecution
(Plaintiff against Defendants Bautista, Navarro, and Salgado)

30. Plaintiff re-alleges what has previously been alleged in the Complaint.

31. Defendants Bautista, Navarro, and Salgado had no probable cause or any other legal justification to arrest the Plaintiff, and in doing so, they violated the Plaintiff's rights under the Fourth Amendment to the United States Constitution.

32. As a result of the actions of Defendants Bautista, Navarro, and Salgado, the Plaintiff suffered incarceration, a loss of liberty, severe emotional distress, as well as pecuniary damages, including but not limited to attorney's fees and the loss of employment, and future employment, including benefits.

33. Defendant Salgado is also being sued on a supervisory theory of liability for turning a blind eye or condoning the false arrest and malicious prosecution of the Plaintiff.

34. The Plaintiff also brings a Section 1983 malicious prosecution claim against Defendants Bautista, Navarro, and Salgado.

WHEREFORE, Plaintiff Tyrone Stallworth demands substantial compensatory damages against Defendants Bautista, Navarro, and Salgado, plus attorneys' fees and costs, plus, because Defendants Bautista, Navarro, and Salgado acted maliciously and/or oppressively, substantial punitive damages, and any such other and additional relief as this Court deems equitable and just.

### COUNT III Indemnification
(Plaintiff against Defendant City of Chicago)

35. Plaintiff re-alleges what has previously been alleged in the Complaint.

36. All of the actions taken by the Defendants Bautista, Navarro, and Salgado were done within the course and scope of their employment with the City of Chicago.

37. The City of Chicago is the indemnifying agent for the actions of the Defendant Officers.

WHEREFORE, Plaintiff Tyrone Stallworth demands that, if any non-punitive damages, fees or costs are awarded against the Defendant Officers, then the City of Chicago should be liable to pay the award.

## COUNT IV State Law Malicious Prosecution
(Plaintiff against Defendant City of Chicago)

38. Plaintiff re-alleges what has previously been alleged in the Complaint.

39. All of the actions taken by the Defendants Bautista, Navarro, and Salgado were done within the course and scope of their employment with the City of Chicago.

40. The City of Chicago is liable for the actions of Defendants Bautista, Navarro, and Salgado on this state law claim based on respondeat superior.

41. Defendants Bautista, Navarro, and Salgado did not have probable cause to arrest the Plaintiff.

42. Defendants Bautista, Navarro, and Salgado acted with malice in prosecuting the Plaintiff.

43. The proceedings against the Plaintiff were terminated against him in a manner consistent with the innocence of the Plaintiff.

WHEREFORE, Plaintiff Tyrone Stallworth demands substantial compensatory damages against Defendant City of Chicago, plus attorney's costs, and any such other and additional relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

_____

Richard Dvorak,
Attorney for the Plaintiff

Richard Dvorak
Christopher A. Tinsley
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146 (p)
(312) 276-4868 (f)